Nos. 12-56154 & 12-56240

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

BOB GRANT; DR. CLINTON JONES; WALTER ROBERTS, III;
MARVIN COBB; and BERNARD PARRISH,

*Plaintiffs/Appellants/Cross-Appellees*,

v.

NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION,
a Virginia corporation; and NATIONAL FOOTBALL LEAGUE PLAYERS
INCORPORATED d/b/a NFL PLAYERS, a Virginia corporation,

*Defendants/Appellees/Cross-Appellants*,

---

On Appeal from the United States District Court
for the Central District of California
No. 11-03118 RGK (FFMx)

---

## APPELLEES' PRINCIPAL AND RESPONSE BRIEF

---

LATHAM & WATKINS LLP
  Daniel Scott Schecter
  James H. Moon
  D. Jason Lyon
355 South Grand Ave.
Los Angeles, California 90071
Telephone:  +1.213.485.1234
Facsimile:  +1.213.891.8763

LATHAM & WATKINS LLP
  David A. Barrett
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004
Telephone:  +1.202.637.2200
Facsimile:  +1.202.637.2201

LATHAM & WATKINS LLP
  Thomas J. Heiden
  Michael J. Nelson
233 South Wacker Dr., Suite 5800
Chicago, Illinois 60606
Telephone:  +1.312.876.7700
Facsimile:  +1.312.993.9767

*Attorneys for Defendants/Appellees/
Cross-Appellants National Football
League Players Association &
National Football League Players
Incorporated*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned, counsel of record for Defendants/Appellees/Cross-Appellants National Football League Players Association ("NFLPA") and National Football League Players Incorporated, d/b/a NFL PLAYERS (collectively, "Defendants") certify that Professional Athletes Foundation and Defendant NFLPA own ten percent or more of the stock of Defendant NFL PLAYERS.  Defendant NFLPA does not have a parent corporation and there is no publicly held corporation owning ten percent or more of its stock.

Dated:  January 16, 2013                    LATHAM & WATKINS LLP
            Thomas J. Heiden
            David A. Barrett
            Daniel Scott Schecter
            Michael J. Nelson
            James H. Moon
            D. Jason Lyon

           By  s/ Daniel Scott Schecter
            Daniel Scott Schecter

           *Attorneys for Defendants/Appellees/*
           *Cross-Appellants National Football*
           *League Players Association & National*
           *Football League Players Incorporated*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

STATEMENT OF JURISDICTION.........................................................4

ISSUES PRESENTED................................................................................5

ADDENDUM ...............................................................................................5

STATEMENT OF THE CASE...................................................................6

    I.     Plaintiffs Fail To Timely Move For Class Certification. ......................6

    II.    The District Court Grants Defendants Summary Judgment. ...............7

    III.   The Orders On Appeal. ........................................................................8

STATEMENT OF FACTS ..........................................................................8

    I.     This Action Follows Prior Related Litigation.......................................8

    II.    Plaintiffs' Individual Factual Circumstances Are Undisputed. ............9

SUMMARY OF ARGUMENT ...............................................................11

ARGUMENT ..............................................................................................13

    I.     The District Court Properly Granted Defendants' Motion for
         Summary Judgment. ..........................................................................13

         A.   Plaintiffs Failed To Present Evidence Creating A Triable
             Issue As To Whether Defendants Owed Them A
             Fiduciary Duty. .......................................................................14

             1.   Plaintiffs Cannot Establish The Elements Of A
                  Licensing Agency Relationship Giving Rise To
                  Fiduciary Duties...........................................................14

                 a.    Plaintiffs Did Not Assent To An Agency
                      Relationship With Defendants With Respect
                      To Licensing.......................................................15

(1)    Plaintiffs Did Not Join The NFLPA
For Purposes Of Licensing.........................16

(2)    Plaintiffs Did Not Give Defendants
Permission To Act As Their Agents..........19

(3)    Plaintiffs Rejected Opportunities To
Enter Into Express Licensing
Agreements. ...............................................23

b.    Plaintiffs Did Not Have Any Control Over
Defendants' Purported Licensing Duties. ............24

c.    Defendants Did Not Consent To Act As
Plaintiffs' Licensing Agents................................27

d.    Plaintiffs Are Not In Privity With NFL
PLAYERS. ..........................................................29

2.    Plaintiffs' Novel Argument Regarding Defendants'
Putative "Admission" Of A Fiduciary Duty Fails..........29

a.    Plaintiffs' Argument Was Not Raised In The
District Court And Should Be Considered
Waived................................................................31

b.    The Evidence Of The "Admission" Is
Inadmissible........................................................32

c.    The Alleged "Admission" Cannot Establish
A Legal Conclusion Regarding Fiduciary
Duties..................................................................35

B.    Plaintiffs Did Not Establish A Breach Of Fiduciary Duty. .......37

II.    The Court Should Affirm The Order Enforcing The Deadline
To Move For Class Certification.........................................................39

A.    The District Court Did Not Abuse Its Discretion. ....................39

B.    The Order Caused No Prejudice. ..............................................44

III.    Plaintiffs' Claims Are Barred By The Statute Of Limitations............46

     A.    Plaintiffs Filed The Action More Than Four Years After
        *Adderley*. ....................................................................46

     B.    The "Continuing Wrong" Exception Does Not Apply To
        Plaintiffs' Breach Of Fiduciary Duty Claims. .........................48

CONCLUSION ........................................................................53

STATEMENT REGARDING ORAL ARGUMENTS ...........................54

STATEMENT OF RELATED CASES ..............................................54

CERTIFICATE OF COMPLIANCE.................................................54

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adderley v. NFLPA,*
  No. 07-00943 WHA (N.D. Cal.) .................................................................. passim

*Alch v. Superior Court,*
  122 Cal. App. 4th 339 (2004) ...................................................................49

*Anderson v. City of Bainbridge Island,*
  472 Fed. App'x 538 (9th Cir. 2012) ....................................................32

*Anheuser-Busch, Inc. v. Natural Beverage Distribs.,*
  69 F.3d 337 (9th Cir. 1995) ....................................................................34

*Archila v. KFC U.S. Props.,*
  420 Fed. App'x 667 (9th Cir. 2011) ......................................................41

*Armstrong Petro. Corp. v. Tri-Valley Oil & Gas Co.,*
  116 Cal. App. 4th 1375 (2004) .................................................................49

*Aryeh v. Canon Bus. Solutions, Inc.,*
  185 Cal. App. 4th 1159 (2010) ............................................................50

*Baccei v. United States,*
  632 F.3d 1140 (9th Cir. 2011) ...............................................................31

*Beyene v. Coleman Sec. Servs., Inc.,*
  854 F.2d 1179 (9th Cir. 1988) ........................................................ 33, 34

*Bias v. Moynihan,*
  508 F.3d 1212 (9th Cir. 2007) ...............................................................33

*Blair Foods, Inc. v. Ranchers Cotton Oil,*
  610 F.2d 665 (9th Cir. 1980) .......................................................... 34, 38

*Brown v. NFLPA,*
  281 F.R.D. 437 (C.D. Cal. 2012) .....................................................7, 45

*Burkhalter v. Montgomery Ward & Co.,*
  676 F.2d 291 (8th Cir. 1982) ..................................................................41

iv

*Cal. ex rel. Metz v. CCC Info. Servs., Inc.*,
  149 Cal. App. 4th 402 (2007) ...............................................49

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).............................................................13

*Christiansen v. Nat'l Sav. & Trust Co.*,
  683 F.2d 520 (D.C. Cir. 1982) ............................................35

*Cislaw v. Southland Corp.*,
  4 Cal. App. 4th 1284 (1992) ...............................................25

*Eagleston v. Guido*,
  41 F.3d 865 (2d Cir. 1994)..................................................35

*Edwards v. Freeman*,
  34 Cal. 2d 589 (1949)..........................................................15

*Emery v. Visa Int'l Serv. Ass'n*,
  95 Cal. App. 4th 952 (2002) .......................................... 15, 25

*Evangelista v. Inlandboatmen's Union of Pac.*,
  777 F.2d 1390 (9th Cir. 1985).............................................35

*Exec. Sec. Mgmt. v. Dahl*,
  No. 09-9273, 2011 U.S. Dist. LEXIS 132538 (C.D. Cal. Nov. 15, 2011) ...........24

*Fournier v. Creditors Interchange Receivable Mgmt., LLC*,
  No. 10-3220, 2011 U.S. Dist. LEXIS 32303 (C.D. Cal. Mar. 16, 2011)..............41

*Glue-Fold, Inc. v. Slautterback Corp.*,
  82 Cal. App. 4th 1018 (2000) .............................................47

*Grandson v. Univ. of Minn.*,
  272 F.3d 568 (8th Cir. 2001)...............................................40

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
  896 F.2d 1542 (9th Cir. 1989)..............................................43

*Hanks v. Carter & Higgins, Inc.*,
  250 Cal. App. 2d 156 (1967)........................................ 15, 36

*Harman v. Apfel*,
  211 F.3d 1172 (9th Cir. 2000)...............................................................40

*Hensley v. United States*,
  531 F.3d 1052 (9th Cir. 2008)...............................................................46

*Hogar Dulce Hogar v. Cmty. Dev. Comm'n*,
  110 Cal. App. 4th 1288 (2003) ..............................................................49

*Icu Med., Inc. v. Cardinal Health 303*,
  No. G037141, 2007 Cal. App. Unpub. LEXIS 5362 (June 29, 2007).................51

*In re E.R. Fegert, Inc.*,
  887 F.2d 955 (9th Cir. 1989)..................................................................32

*In re S.W. Bach & Co.*,
  No. 07-11569, 2010 Bankr. LEXIS 464 (Bankr. S.D.N.Y. Feb. 24, 2010).........36

*ING Bank v. Ahn*,
  758 F. Supp. 2d 936 (N.D. Cal. 2010) .....................................................25

*Intermedics, Inc. v. Ventritex, Inc.*,
  822 F. Supp. 634 (N.D. Cal. 1993) ................................................... 50, 52

*Janis v. Cal. State Lottery Comm'n*,
  68 Cal. App. 4th 824 (1998) ..................................................................13

*Jenkins v. Winter*,
  540 F.3d 742 (8th Cir. 2008)..................................................................34

*Jorgensen v. Cassiday*,
  320 F.3d 906 (9th Cir. 2003)..................................................................40

*Joseph v. J.J. Mac Intyre Cos.*,
  281 F. Supp. 2d 1156 (N.D. Cal. 2003) ...................................................49

*King v. AC & R Advertising*,
  65 F.3d 764 (9th Cir. 1995)...................................................................32

*Komarova v. Nat'l Credit Acceptance, Inc.*,
  175 Cal. App. 4th 324 (2009) ................................................................49

*Lemoge v. United States*,
  587 F.3d 1188 (9th Cir. 2009)....................................................................... 41, 42

*Lugosi v. Universal Pictures*,
  25 Cal. 3d 813 (1979)........................................................................................26

*Marshall v. Gates*,
  44 F.3d 722 (9th Cir. 1995).............................................................................39

*Martinez v. Am.'s Wholesale Lender*,
  446 Fed. App'x 940 (9th Cir. 2011) ................................................................33

*Michelson v. Hamada*,
  29 Cal. App. 4th 1566 (1994) .........................................................................50

*Millette v. DEK Techs., Inc.*,
  No. 08-60639, 2009 U.S. Dist. LEXIS 93908 (S.D. Fla. Oct. 8, 2009) ..............36

*Minskoff v. Am. Express Travel Related Servs. Co.*,
  98 F.3d 703 (2d Cir. 1996)..............................................................................15

*Noggle v. Bank of America*,
  70 Cal. App. 4th 853 (1999) ..................................................................... 50, 51

*Norris & Galanter LLP v. Gray Gieleghem Belcher LLP*,
  No. B160503, 2004 Cal. App. Unpub. LEXIS 1491 (Feb. 19, 2004) .................51

*Nw. Envt'l Def. Ctr. v. Brown*,
  640 F.3d 1063 (9th Cir. 2011).........................................................................46

*Oasis W. Realty, LLC v. Goldman*,
  51 Cal. 4th 811 (2011) ....................................................................................13

*Obrey v. Johnson*,
  400 F.3d 691 (9th Cir. 2005)...........................................................................44

*Orr v. Bank of Am.*,
  285 F.3d 764 (9th Cir. 2002)...........................................................................33

*Peterson v. Picker*,
  No. G042996, 2011 Cal. App. Unpub. LEXIS 3797 (May 19, 2011)................51

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*,
    507 U.S. 380 (1993) ................................................................................41

*Pugliese v. Superior Court*,
    146 Cal. App. 4th 1444 (2007) ...............................................................49

*Rasidescu v. Midland Credit Mgmt., Inc.*,
    435 F. Supp. 2d 1090 (S.D. Cal. 2006).................................................43

*Richards v. CH2M Hill, Inc.*,
    26 Cal. 4th 798 (2001) ...........................................................................49

*Smith v. Goodyear Tire & Rubber Co.*,
    856 F. Supp. 1347 (W.D. Mo. 1994) ......................................................36

*St. Paul Ins. Co. v. Indus. Underwriters Ins. Co.*,
    214 Cal. App. 3d 117 (1989)...................................................................27

*Steinberg v. Kohn*,
    No. B168457, 2004 Cal. App. Unpub. LEXIS 7168 (July 29, 2004)..................51

*Sun Microsys. Inc. v. Hynix Semiconductor Inc.*,
    622 F. Supp. 2d 890 (N.D. Cal. 2009) ...................................................28

*Szajer v. City of Los Angeles*,
    632 F.3d 607 (9th Cir. 2011)...................................................................13

*Taylor v. List*,
    880 F.2d 1040 (9th Cir. 1989).................................................................37

*Torres v. Cnty. of Oakland*,
    758 F.2d 147 (6th Cir. 1985)...................................................................35

*Union Bank v. Superior Court*,
    31 Cal. App. 4th 573 (1995) ...................................................................13

*United States v. Bestfoods*,
    524 U.S. 51 (1998).................................................................................29

*United States v. Comprehensive Drug Testing, Inc.*,
    473 F.3d 915 (9th Cir. 2006)...................................................................39

*Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n*,
  56 Cal. 2d 329 (1961) ............................................................. 50

*Verner v. Swiss II, LLC*,
  No. 09-5701, 2010 U.S. Dist. LEXIS 4443 (C.D. Cal. Jan. 6, 2010) ................... 41

*Victaulic Co. v. Tieman*,
  499 F.3d 227 (3d Cir. 2007) .................................................... 34

*Watson v. Schwarzenegger*,
  347 Fed. App'x 282 (9th Cir. 2009) ......................................... 40, 41

*Whisper Soft Mills, Inc. v. N.L.R.B*,
  754 F.2d 1381 (9th Cir. 1984) .................................................. 28

*Whittaker Corp. v. Execuair Corp.*,
  736 F.2d 1341 (9th Cir. 1984) .................................................. 50

*Winter v. DC Comics*,
  30 Cal. 4th 881 (2003) ......................................................... 26

*Wong v. Regents of the Univ. of Cal.*,
  410 F.3d 1052 (9th Cir. 2005) ................................................. 40

## STATUTES

28 U.S.C. § 1291 ................................................................... 4

28 U.S.C. § 1332 ................................................................... 4

28 U.S.C. § 2111 .................................................................. 44

Cal. Civ. Code § 2298 ............................................................ 14

Cal. Civ. Code § 2355 ............................................................ 27

Cal. Civ. Proc. Code § 343 ....................................................... 46

## RULES

Fed. R. App. P. 28.1(e)(2) ........................................................ 54

Fed. R. App. P. 4(a)(3)........................................................................5

Fed. R. Civ. P. 23(b)(3)......................................................................45

Fed. R. Civ. P. 56(c)..........................................................................13

Fed. R. Civ. P. 56(e)..........................................................................33

Fed. R. Civ. P. 6(a)............................................................................42

Fed. R. Civ. P. 6(b) ...........................................................................42

Fed. R. Evid. 701...............................................................................35

Fed. R. Evid. 802...............................................................................34

Fed. R. Evid. 805...............................................................................34

Fed. R. Evid. 901(a)...........................................................................33

Ninth Circuit Rule 28-2........................................................................4

Ninth Circuit Rule 28-2.6 ...................................................................54

## TREATISES

Charles Wright *et al.*,
   Federal Practice and Procedure § 1785.3 (3d ed. 2004) ......................................40

William Schwarzer *et al.*,
   Federal Civil Procedure Before Trial, 9th Cir. ed. § 10:564 (2012).....................40

## INTRODUCTION

This Court should affirm the district court's entry of final judgment in Defendants' favor on Plaintiffs' individual claims for breach of fiduciary duty. Plaintiffs, former professional football players, present only two issues for consideration on appeal: (i) whether Defendants were entitled to summary judgment; and (ii) whether the district court abused its discretion by enforcing a local rule deadline for the filing of a class certification motion.

Defendants are entitled to summary judgment, and the district court did not abuse its discretion in enforcing its local rule. Further, as to Defendants' cross-appeal, the judgment can and should be affirmed on the independent ground of statute of limitations. Defendants respectfully request that the Court reject Plaintiffs' appeal and grant Defendants repose from Plaintiffs' baseless claims.

**First Issue on Appeal: Affirm Summary Judgment for Defendants.**
After full discovery, Plaintiffs failed to come forward with evidence sufficient to oppose summary judgment on their sole claim for breach of fiduciary duty based on Defendants' alleged failure to license Plaintiffs' names and likenesses. In the district court, Plaintiffs asserted that the sole basis for Defendants' fiduciary duties was a licensing agency relationship premised on membership in the NFLPA. The record, however, revealed Plaintiffs' claims to be meritless:

- Not one of the five Plaintiffs "joined" the NFLPA for purposes of licensing – three were not even members during the actionable period;

- Not one Plaintiff gave Defendants permission to represent him for purposes of licensing during the actionable period;

1

- Not one Plaintiff entered into an express licensing agreement with Defendants with respect to the actionable period;

- Not one Plaintiff could articulate what Defendants' purported licensing responsibilities entailed;

- Not one Plaintiff had a right to control the means and manner of Defendants' purported licensing responsibilities;

- Not one Plaintiff could point to a breach of fiduciary duty within the actionable period; and

- Defendants have repeatedly disavowed any obligation to Plaintiffs with respect to licensing during the actionable period.

Based on these undisputed facts – which preclude any possible express or implied agency relationship between the parties – the district court reached the inescapable conclusion that Defendants were entitled to summary judgment.

On appeal, Plaintiffs, recognizing the futility of establishing a triable issue based on the factual record, advance a new argument: that Defendants "admitted" the existence of a fiduciary duty (in a wholly unrelated context), and that the purported "admission" creates a triable issue of fact. First, Plaintiffs' argument fails because it was not raised in the district court and is thus waived on appeal. Second, it is unsupported by competent evidence; Plaintiffs rely entirely on an unauthenticated, inadmissible, and misleading blog post purporting to summarize third-hand (rather than directly quote) a statement an anonymous blogger attributed to the NFLPA's Executive Director. Third, even if the argument could be considered, it would fail on the merits because the party "admission," at most,

constitutes a legal conclusion that cannot support a finding of bilateral action necessary to give rise to the licensing agency relationship alleged here.  The Court should accordingly affirm summary judgment for Defendants.

**Second Issue on Appeal:  Affirm the Order Precluding Untimely Motion for Class Certification.**  The district court did not abuse its discretion by denying Plaintiffs' request to file a late class certification motion in contravention of a Central District of California local rule.  The district court was entitled to enforce the deadline, established by a long-standing local rule, despite any mistaken understanding by Plaintiffs.  In any event, any claimed error was harmless; after the district court's order, Plaintiffs' counsel filed a substantially identical action and a timely Motion for Class Certification encompassing Plaintiffs.  That motion was denied, on the merits, by the same district court, and an appeal from that denial is pending in a separate proceeding before this Court.

**Third Issue on Appeal (Cross-Appeal):  Alternatively Affirming Judgment on Statute of Limitations Ground.**  The district court's entry of judgment can and should be upheld based on Defendants' statute of limitations defense, as raised in Defendants' cross-appeal.  Plaintiffs filed their lawsuit more than four years after the filing of another action, which placed Plaintiffs on notice of any purported breach of fiduciary duty related to licensing.  Plaintiffs do not deny this point; they instead claim that Defendants' continuing failure to represent them within the limitations period allows them to maintain their suit.  As a matter of law, Plaintiffs' "continuing wrong" theory cannot save their untimely action.

Defendants respectfully request that the Court affirm the judgment.

3

## STATEMENT OF JURISDICTION

Pursuant to Ninth Circuit Rule 28-2:

(a)    Defendants concur with Plaintiffs' Statement of Jurisdiction regarding the statutory basis for the district court's jurisdiction.  (Pls.' First Brief on Cross Appeal ("Pls.' First Br.") at 2.)  The district court had jurisdiction pursuant to 28 U.S.C. § 1332.  Defendants are citizens of Virginia.  (Pls.' Excerpts of R. ("ER") 475-76 ¶¶ 8, 10.)  Plaintiffs purport to be citizens of California and Florida.  (ER-475 ¶¶ 3-7.)

(b)    Defendants concur with Plaintiffs' Statement of Jurisdiction regarding the finality of the judgment appealed from and the statutory basis of this Court's jurisdiction.  This Court's jurisdiction is based on 28 U.S.C. § 1291, which grants the courts of appeals "jurisdiction of appeals from all final decisions of the district courts of the United States."  The district court entered final judgment pursuant to its order granting Defendants' Motion for Summary Judgment.

(c)    The district court entered the Judgment on May 23, 2012.  (ER-16.) In addition to the Judgment, Plaintiffs appeal the Order Denying Plaintiffs' *Ex Parte* Application to Set a Class Certification Briefing Schedule, dated October 19, 2011, and Order Granting Defendants' Motion for Summary Judgment dated May 22, 2012.  (ER-2.)  Defendants cross appeal the district court's order denying Defendants' Motion to Dismiss, entered on September 19, 2011, as a supplemental basis for upholding the Judgment.  (Defs.' Supp. Excerpt of R. ("SER") 21.)

Pursuant to Federal Rule of Appellate Procedure 4(a)(3), Defendants timely filed their Cross-Notice of Appeal on July 5, 2012, within 14 days of Plaintiffs' timely Notice of Appeal, filed on June 21, 2012.  (SER-21.)

## ISSUES PRESENTED

1.      Whether Defendants are entitled to summary judgment where Plaintiffs failed to produce competent evidence sufficient to establish a triable issue regarding any element of their sole substantive claim for breach of fiduciary duty.

2.      Whether the district court abused its discretion by enforcing the deadline set forth in Central District of California Local Rule 23-3 to bring a motion for class certification.

3.      Whether the district court's entry of judgment should be sustained on the independent ground that Plaintiffs' claims are barred by the statute of limitations.

## ADDENDUM

At all times relevant to this action, Local Rule 23-3 for the Central District of California provided as follows:

> Within 90 days after service of a pleading purporting to commence a class action other than an action subject to the Private Securities Litigation Reform Act of 1995, P.L. 104-67, 15 U.S.C. § 772-1 *et seq.*, the proponent of the class shall file a motion for certification that the action is maintainable as a class action, unless otherwise ordered by the Court.

C.D. Cal. L.R. 23-3.

## STATEMENT OF THE CASE

On April 11, 2011, Plaintiffs filed their initial complaint against Defendants for breach of a fiduciary duty and an accounting.  Plaintiffs alleged that Defendants failed to act as their licensing agents and wrongfully denied them licensing opportunities and revenue.  (ER-484 ¶¶ 35, 37.)  Plaintiffs claimed that this violation "occurred within the past four (4) years and is ongoing."  (ER-474.)

## I.    Plaintiffs Fail To Timely Move For Class Certification.

After Plaintiffs filed their complaint, the parties stipulated to a briefing schedule for Defendants' Motion to Dismiss.  (SER-1057.)  The district court entered the stipulation, which included a provision tolling the 90-day deadline to file a class certification motion under Central District of California Local Rule 23-3.  (SER-19.)  Before Defendants filed their Motion to Dismiss, Plaintiffs voluntarily filed an amended complaint.  The parties then filed a second stipulation, requesting a new briefing schedule and further tolling of Rule 23-3.  (SER-1061.)  On June 17, 2011, the district court entered the schedule but unequivocally struck the stipulated request to toll Rule 23-3's deadline.  (SER-15.)

The parties then briefed the Motion to Dismiss.  The district court denied the Motion to Dismiss on September 19, 2011, finding that based on the then-present state of the record, it could not determine that the four-year statute of limitations had run on Plaintiffs' claims.  (SER-9.)  The parties subsequently filed a third stipulation setting a briefing schedule for a class certification motion.  (SER-966.)  The district court denied the stipulation in its entirety on October 7, 2011, citing its

June 17 order.  (SER-5.)  A week later, Plaintiffs filed a fourth stipulation regarding class certification, which was likewise denied.  (ER-448; SER-2.)

Plaintiffs next filed an *Ex Parte* Application to Set a Class Certification Briefing Schedule (the "Class Certification Application").  (SER-936.)  Plaintiffs asked the district court to extend the deadline set by Rule 23-3 and excuse their "inadvertent mistake and misinterpretation" of the June 17 order.  (SER-939.)  The court rejected the application on October 19, 2011.  (ER-28.)

Two months later, counsel for Plaintiffs filed a related action captioned *Brown v. NFLPA*, No. 11-01953 (C.D. Cal. filed Dec. 9, 2011), on behalf of three similarly-situated plaintiffs.  The *Brown* complaint, including its class allegations, was substantively identical to the operative complaint in this action.  (*Compare* ER-472 *with* Mot. Req. Jud. Not. ("RJN"), Ex. A.)  Despite the district court's enforcement of Rule 23-3 in this action, the *Brown* action enabled Plaintiffs' counsel to bring a timely motion to certify a nearly-identical putative class.  (RJN, Ex. B.)  That motion was fully briefed, adjudicated, and denied *on the merits* by the same district court on March 29, 2012.  *See Brown v. NFLPA*, 281 F.R.D. 437, 443-44 (C.D. Cal. 2012) (RJN, Ex. C).  The appeal of the class certification ruling is separately pending before this Court.  *See Brown v. NFLPA*, Nos. 12-56843 & 12-56912 (9th Cir. filed Oct. 12, 2012).

## II.    The District Court Grants Defendants Summary Judgment.

In parallel with *Brown*, Plaintiffs' claims here proceeded through discovery as an individual action.  At the close of fact discovery, Defendants filed a Motion for Summary Judgment, arguing that there was no triable issue with respect to each

element of Plaintiffs' breach of fiduciary duty claim. (ER-440.) The district court granted Defendants summary judgment on May 22, 2012, and entered judgment in Defendants' favor on May 23, 2012. (ER-20, ER-16.)

## III. The Orders On Appeal.

The parties present three district court orders for review. Plaintiffs appeal the district court's Order Granting Summary Judgment and its Order Denying Plaintiffs' Class Certification Application. (ER-1.) Defendants cross-appeal the district court's Order Denying Defendants' Motion to Dismiss as an alternative basis for upholding the district court's judgment in Defendants' favor. (SER-20.)

## STATEMENT OF FACTS

## I. This Action Follows Prior Related Litigation.

Plaintiffs have admitted that this action is a follow-on to a separate and settled class action, *Adderley v. NFLPA*, No. 07-00943 WHA (N.D. Cal.), filed on February 14, 2007. (ER-473-74.) The *Adderley* plaintiffs, which included two Plaintiffs in this action (Bernard Parrish and Walter Roberts III), alleged that Defendants "breached a fiduciary duty . . . by failing to pursue licensing opportunities on behalf of the retired players, concentrating its efforts instead on current players." (ER-473.) In *Adderley*, the plaintiffs moved to certify two classes: (i) all former players who signed licensing agreements called Group Licensing Authorization forms ("GLAs") with Defendants; and (ii) all former players who joined the NFLPA. (ER-175.) The *Adderley* court certified the first class but rejected the second. (ER-188.)

In the present action, Plaintiffs sought to represent "a class of retired NFL football players who were *not* previously included in the *Adderley* Class" because they did not have or did not produce GLAs. (ER-474.)  Plaintiffs here assert that Defendants had an obligation to license these individuals' images and likenesses even though (in contrast to the certified GLA class in *Adderley*) they did not have, or even affirmatively rejected, a GLA or any other contract with Defendants.  (*Id.*)[1]

## II.     Plaintiffs' Individual Factual Circumstances Are Undisputed.

The Plaintiffs in this action are five former professional football players. They allege the existence of a fiduciary duty with respect to licensing activities owed by (i) their former union, the NFLPA, and (ii) the NFLPA's licensing arm, NFL PLAYERS.  The alleged fiduciary duty is premised on a purported licensing agency relationship, which Plaintiffs contend arose because they allegedly were NFLPA members during the relevant period.

NFLPA membership for a former player requires the payment of annual dues, or express excusal of such dues for a recognized reason (*e.g.*, attending the NFLPA's annual former player convention).[2]  Former player membership is a

---

[1]     Each of the five Plaintiffs here was also a plaintiff in another class action, *Parrish v. Manatt, Phelps & Phillips LLP*, No. 10-3200 (N.D. Cal. filed July 21, 2010), alleging legal malpractice and breach of fiduciary duty against class counsel in *Adderley*.  (SER-1007.)  The *Parrish* plaintiffs claimed "legal malpractice against [class counsel] for wrongfully excluding them 'from participation in the underlying action therefore depriving [them] from recovery to which they were otherwise entitled.'"  (SER-1010.)  That action was dismissed on December 13, 2010.  (SER-1007.)  Four months later, Plaintiffs, represented by the same counsel from *Parrish*, filed their initial complaint in this action.

[2]     ER-499-500; SER-55-56 ¶ 1, SER-623 ¶¶ 2-5, SER-626, SER-631, SER-699, SER-702, SER-744, SER-747, SER-792, SER-797, SER-859, SER-864, SER-899-914, SER-514, SER-575, SER-603, SER-608, SER-611.

9

limited status within the NFLPA; for example, they can receive discounts from vendors and access to certain publications. (SER-626.) In contrast, active players have additional monetary requirements to the NFLPA and commensurately receive additional benefits from active union membership. (*See* ER 497-500.)

Only two of the five Plaintiffs – Clinton Jones and Marvin Cobb – qualified as NFLPA members at any point during the four years preceding the filing of this action.[3]

- It is undisputed that Plaintiff Walter Roberts III retired in 1970 and never paid membership dues to the NFLPA nor had them excused.[4]

- It is undisputed that Plaintiff Bob Grant retired in 1971 and paid annual dues one time in 1993, and never had his dues excused.[5]

- It is undisputed that Plaintiff Bernard Parrish retired in 1966 and paid annual dues three times, in 1996, 1999, and April 2005, and never had his dues excused.[6]

Plaintiffs filed this action on April 13, 2011 and – to avoid the application of the statute of limitations – conceded that their claims are limited to purported breaches of duties occurring during the past four years, *i.e.*, after April 13, 2007 (the "Actionable Period"). (ER-474; SER-322 n.1.) Plaintiffs admit that they are *not* parties to any GLA or any other licensing agreement with Defendants in effect

---

[3]    SER-57-58 ¶¶ 5, 7, SER-624 ¶¶ 10-12, SER-358-60, SER-406-11, SER-421, SER-451, SER-463-64, SER-559-60, SER-565-66, SER-571-72.

[4]    SER-57 ¶ 5(a), SER-624-25 ¶ 12, SER-421, SER-451, SER-559-60.

[5]    SER-57 ¶ 5(b), SER-624 ¶ 10, SER-571-72.

[6]    SER-57 ¶ 5(c), SER-624 ¶ 11, SER-463-64, SER-565-66.

during any part of the Actionable Period.[7]  The sole basis for Plaintiffs' claims in the district court was an alleged licensing agency relationship arising out of Plaintiffs' alleged membership in the NFLPA as former players.  (ER-481-82 ¶¶ 26, 27, ER-486 ¶ 46.)

Plaintiffs admit that their claims are based on the assertion that they were "never compensated for appearing in video games."[8]  Plaintiffs have not personally seen the video games at issue, but claim that they learned of their alleged appearance in them by friends and family.[9]  The video games they identify all predate the Actionable Period.[10]

## SUMMARY OF ARGUMENT

Plaintiffs' appeal should be denied.  The district court properly (i) granted Defendants' Motion for Summary Judgment, and (ii) rejected Plaintiffs' Class Certification Application.

The district court properly entered summary judgment for Defendants. Plaintiffs failed to present any evidence to demonstrate the existence of a fiduciary duty based on a licensing agency relationship, which requires a showing of: (i) Plaintiffs' assent to enter into a licensing agency relationship; (ii) Plaintiffs' control over the manner and means of Defendants' licensing activities; and

---

[7]     ER-377, ER-486 ¶ 46; SER-61 ¶ 17, SER-363-64, SER-381-82, SER-400-01, SER-433, SER-439-40, SER-444-45, SER-480-81.

[8]     ER-379; SER-62, SER-542, SER-549, SER-556, SER-563, SER-569.

[9]     ER-380; SER-63 ¶¶ 27, 28, SER-369-70, SER-379-80, SER-413, SER-425, SER-428, SER-442-43, SER-466, SER-468-69.

[10]    SER-62 ¶ 27, SER-370-71, SER-379-80, SER-442-43, SER-469.

(iii) Defendants' consent to the arrangement.  Failure to demonstrate the existence of a triable issue on any one of these elements is fatal – here, Plaintiffs failed on all three.

Lacking evidence to support any element of their claims, on appeal Plaintiffs advance a new argument regarding the existence of a fiduciary duty based on an alleged admission.  This argument should be rejected because it (i) was not presented or addressed in the district court; (ii) is based on incompetent evidence; and (iii) could not create a triable issue on the merits even if it somehow could be characterized as competent evidence (which it cannot).

Alternatively, Defendants' cross appeal should be granted – and the district court's entry of judgment should be affirmed.  Plaintiffs' claims were barred by the statute of limitations.  Plaintiffs were aware of a similar action filed more than four years prior to the filing of this action.  Plaintiffs' "continuing wrong" theory, in which alleged omissions within and beyond the limitations period create separately viable causes of action, should be rejected.

Finally, the district court did not abuse its discretion by enforcing a local rule setting a deadline for the filing of class certification motions.  Plaintiffs' failure to meet the deadline (even if inadvertent) does not constitute good cause requiring the district court to ignore the rule.  Also, there was no prejudice from the decision because Plaintiffs had their claims adjudicated, and the proposed putative class had a full opportunity to seek class certification in the substantively identical *Brown* action, which was fully briefed and denied on the merits.

In all events, Defendants are entitled to final judgment in this action.

12

# ARGUMENT

## I.    The District Court Properly Granted Defendants' Motion for Summary Judgment.

The Court should affirm the district court's considered entry of summary judgment in favor of Defendants.

This Court reviews the grant of summary judgment *de novo*. *Szajer v. City of Los Angeles*, 632 F.3d 607, 610 (9th Cir. 2011). Pursuant to Federal Rule of Civil Procedure 56(c), the Court must determine "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id*. Summary judgment must be granted where there is an absence of proof concerning even a single element of a claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

To avoid summary judgment, Plaintiffs bore the burden of coming forward with competent evidence sufficient to establish a triable issue as to each element of their sole substantive claim[11] for breach of fiduciary duty: (i) the existence of a fiduciary duty, (ii) a breach of a fiduciary duty, and (iii) damages. *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 815 (2011).[12] Because Plaintiffs failed

---

[11]    Plaintiffs also alleged a second claim for an accounting. (ER-487.) The accounting claim, however, is not an independent basis for relief. *See Janis v. Cal. State Lottery Comm'n*, 68 Cal. App. 4th 824, 833 (1998); *Union Bank v. Superior Court*, 31 Cal. App. 4th 573, 594 (1995). Because Plaintiffs' sole substantive claim for breach of fiduciary duty failed for the reasons stated below, the district court properly dismissed the derivative accounting claim. (ER-15.)

[12]    The district court found that California law should apply to Plaintiffs' claims. (SER-10-11.) California law may fairly be applied in this individual action because it was brought by five individuals, four of whom lived in California for most of the Actionable Period. Defendants expressly reserve their right to challenge the proper choice of law in other contexts, involving other plaintiffs.

to present evidence sufficient to demonstrate a material factual dispute as to any of these elements, the district court's Order Granting Defendants' Motion for Summary Judgment should be affirmed.

**A.   Plaintiffs Failed To Present Evidence Creating A Triable Issue As To Whether Defendants Owed Them A Fiduciary Duty.**

The district court properly found that Plaintiffs failed to demonstrate the existence of a fiduciary duty.  Plaintiffs' arguments on appeal – that (i) there was a licensing agency relationship between the parties based on bilateral consent and that (ii) Defendants "admitted" they owed such a duty – are unpersuasive and unsupported by the record.  Accordingly, the judgment should be affirmed.

**1.   Plaintiffs Cannot Establish The Elements Of A Licensing Agency Relationship Giving Rise To Fiduciary Duties.**

Plaintiffs contend that Defendants were not entitled to summary judgment because Plaintiffs presented evidence sufficient to raise genuine issues of material fact as to whether a licensing agency relationship existed between the parties. (Pls.' First Br. at 14.)  Because Plaintiffs repeatedly disclaimed any theory of ostensible agency or agency by estoppel (ER-384, No. 5; SER-329 n.6), they had to present evidence of an "actual" agency based on a knowing and voluntary relationship under California law.  *See* Cal. Civ. Code § 2298.  Plaintiffs failed to establish an actual agency with respect to licensing.

An actual agency requires proof of (i) a manifestation of assent by the principals (Plaintiffs) that the agents (Defendants) take an action; (ii) on the principals' behalf and subject to their control; and (iii) a manifestation of the

agents' consent to the arrangement.  *See Edwards v. Freeman*, 34 Cal. 2d 589, 592 (1949).  When the essential facts regarding the existence of an agency relationship "are not in conflict and the evidence is susceptible to a single inference, the agency determination is a matter of law for the court."  *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002).  Here, the undisputed facts preclude each Plaintiff from establishing not just one essential element of a licensing agency relationship (which would be dispositive), but all three.

### a. Plaintiffs Did Not Assent To An Agency Relationship With Defendants With Respect To Licensing.

Plaintiffs fail on appeal because they fail to point to any evidence demonstrating *their* assent to a licensing agency relationship giving rise to fiduciary duties.  The law has never been in dispute here (ER-385):  the "formation of an agency relationship is a bilateral matter" and "[w]ords or conduct by both principal and agent are necessary to create the relationship."  *Hanks v. Carter & Higgins, Inc.*, 250 Cal. App. 2d 156, 163 (1967).  Plaintiffs' words or conduct must have caused Defendants to "reasonably infer" authority to act on Plaintiffs' behalf with respect to licensing.  *See Minskoff v. Am. Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996).

The district court properly granted summary judgment since the undisputed evidence established that none of the Plaintiffs "manifested a desire to enter into an agency relationship with the NFLPA for licensing purposes" – through words, conduct, or otherwise.  (ER-22-24.)  The record reveals, as explained below, that each Plaintiff (i) did not join NFLPA for purposes of licensing, (ii) did not

communicate with or otherwise manifest their assent to Defendants, and (iii) in fact affirmatively rejected opportunities to enter into an express licensing agency relationship.  Plaintiffs thus failed to establish this essential element of their claim.

### (1)     Plaintiffs Did Not Join The NFLPA For Purposes Of Licensing.

Plaintiffs' case is built around the assertion that they were members of the NFLPA by virtue of their status as former players, and that because of this relationship, they reasonably expected licensing representation.  (Pls.' First Br. at 23-28.)  Each Plaintiff, however, specifically admitted that this foundational allegation is simply not true.  The undisputed reality of each Plaintiff's membership history demonstrates a complete absence of assent to any licensing agency relationship.

Contrary to Plaintiffs' assertions, there is nothing "complicated" or "convoluted" about the requirements for NFLPA membership as a former player.  (Pls.' First Br. at 5, 26.)  The district court correctly determined from the record that "[r]etired NFL players, such as Plaintiffs, receive two years of free membership in the NFLPA immediately upon retiring from the NFL, after which point they must pay annual dues in order to remain members.  The NFLPA waives membership dues for players who register and attend the annual former players convention."[13]

---

[13]     ER-22, ER-499-500; SER-55-56 ¶¶ 1, 3, SER-517-21, SER-580-83, SER-603-15, SER-623-24 ¶¶ 2-5, SER-627, SER-631, SER-699, SER-702, SER-744, SER-747, SER-792, SER-797, SER-859, SER-864, SER-899-934.

Plaintiffs Parrish, Grant, and Roberts did not pay dues for any part of the Actionable Period and did not qualify for any excusal of dues during that period. (ER-22-23.)  In fact, each of these three made an affirmative decision to *opt out* of the NFLPA because of their dissatisfaction with the NFLPA.  They were not NFLPA members during the Actionable Period, and that fact nullifies the seminal premise of their claims.

*Roberts*:  Based on the record, Plaintiffs admit that Roberts was never a member of the NFLPA as a former player.  (ER-373; *see* SER-58 ¶ 6(c), SER-422, SER-624-25 ¶ 12.)  Roberts testified that he never joined the NFLPA because he "didn't feel that they were representing [former players] properly."  (SER-422.)

*Parrish*:  Parrish was not a member of the NFLPA at any point within the Actionable Period.  Plaintiffs do not argue that Parrish paid annual dues of $100 or otherwise had his dues waived by the NFLPA.  Instead, they argue that Parrish paid dues "in forms other than the $100 annual payment."  (ER-372; SER-462, SER-464.)  This argument is nonsensical, and fails to satisfy the objective membership standard promulgated by the NFLPA.  (ER-372.)  Plaintiffs' argument regarding Parrish's membership is also refuted by his own deposition testimony.  Parrish affirmatively testified that he stopped paying dues and allowed his membership to lapse "[b]ecause the [NFLPA] said that [it] did not represent [him] and that the retired players had no representation."  (ER-23; SER-57 ¶ 6(a), SER-460-62, SER-493, SER-496-501.)  On appeal, Parrish now unabashedly asserts a claim based on his alleged NFLPA membership, which is entirely at odds with his sworn testimony.

17

*Grant*:  Similarly, Grant's membership in the NFLPA expired years before the Actionable Period.  (ER-22; SER-58 ¶ 6(b), SER-597.)  Grant chose to stop paying annual dues in 1993 because of his general resentment of the NFLPA:  "I will not renew my membership with them until ALL MEN WHO PLAYED ARE VESTED in the Pension Plan, until ALL MEN WHO PLAYED HAVE A VOTE FOR LIFE, until there is RESTITUTION for all monies diverted, taken or stolen from US and until the antiquated and outdated platform of the Union is replaced."  (ER-372 at 6(b); SER-58 ¶ 6(b), SER-597.)  Grant now claims to be a member of the organization he seeks to overthrow.

The two remaining Plaintiffs – Cobb and Jones – were dues-paying members for part of the Actionable Period.  As the district court determined, however, "this fact alone is not enough to create a genuine factual issue as to whether an agency relationship exists between the parties."  (ER-23-24.)  Neither manifested an intention to enter into a licensing agency agreement with Defendants.  Indeed, Cobb and Jones unequivocally testified that they joined the NFLPA for reasons *entirely unrelated* to expectations with respect to licensing.

*Cobb*:  Cobb expressly admitted that the only reason he joined the NFLPA was to obtain a former player membership directory.  (SER-58 ¶ No. 7(a), SER-358-60.)  He repeatedly testified that he did not join for any "particular benefit," or "any other reason" than to obtain the member directory.  (SER-358 ("Q. Any other reason that you paid dues to the NFLPA [ ] other than getting a copy of the directory?  A.  I don't think so.").)  Cobb also admitted that he has not had any communication with Defendants about licensing in the last 30 years.  (SER-60

¶ 13, SER-352-57, SER-544-45.)  Cobb's testimony precludes any finding that he assented to a licensing agency relationship based on NFLPA membership.

**Jones:**  Jones testified that he joined the NFLPA solely to be in a "fraternity" with former players, and that he did not believe the NFLPA would provide anything else in return.  (SER-58 ¶ 7(b), SER-406-11.)  Jones admitted that he paid dues over the years to "stay in touch" with other former players.  (SER-407 ("Q.  Your main motivation was fraternity?  A.  That's what fraternities do is to stay in touch.").)  Jones disclaimed ever communicating with Defendants about licensing.  (SER-60 ¶ 12, SER-402-05, SER-551-52.)  His admissions preclude any finding of assent to a licensing agency relationship by a rational trier of fact.

These facts are dispositive.  Parrish, Grant, and Roberts were not NFLPA members at any point in the Actionable Period.  And Cobb and Jones did not join for any reason related to licensing.  Plaintiffs' foundational factual allegation – that they joined the NFLPA to enter into a licensing agency relationship with Defendants – is negated by the undisputed record and was a complete fabrication.

### (2)    Plaintiffs Did Not Give Defendants Permission To Act As Their Agents.

Plaintiffs further failed to otherwise demonstrate their assent to enter into a licensing agency relationship with Defendants, through words or conduct.  Plaintiffs' unequivocal testimony established that they never gave Defendants permission to represent them for purposes of licensing.  Accordingly, the district

court properly ruled that Plaintiffs failed to manifest their intention to enter into a licensing agency relationship.

**Cobb**:  Plaintiffs fail to identify a single manifestation *by Cobb* signaling his intention to enter into a licensing agency relationship with Defendants within the Actionable Period.  (Pls.' First Br. at 23-24; ER-24.)  Indeed, Cobb testified that he never had a discussion, call, meeting, or "any form of communication" with Defendants "about the licensing of rights or images" after his retirement from the NFL in 1980.  (SER-60 ¶ 13, SER-352-57, SER-544-45.)  Cobb also testified that the NFLPA does not represent him in any way.  (SER-59 ¶ 9, SER-372, SER-376 ("Q.  Now, does [NFL PLAYERS], represent you in any way? . . . A.  I don't believe so.  I mean I have not given them permission to.").)

**Jones**:  The district court correctly determined that Jones failed to demonstrate assent because he did "not recall ever having a conversation with NFLPA about licensing [and] admits that he never gave the NFLPA permission to use his likeness in any manner."  (ER-24.)  This inescapable conclusion is buttressed by Jones' unequivocal testimony that the NFLPA was *not* authorized to license his image.  (SER-58-59 ¶ 8, SER-402, SER-412-14 ("Q.  Did you ever give [Defendants] permission to use your likeness[?]  A.  No.").)  On appeal, Plaintiffs attempt to muddy Jones' clear admissions by reference to vague and speculative testimony that Jones "possibly talked to somebody . . . possibly [NFLPA employee] Andre Collins" about licensing.  (Pls.' First Br. at 24.)  Plaintiffs fail to reference, and leave out of the record, Jones' testimony on the next page of the

transcript making clear that Jones did not assent to Defendants' representation by speaking to Collins:

> Q.  Now, can you ever recall speaking to Mr. Collins about
>     authorizing the NFLPA to use your name or likeness in licensing?
> A.  I don't recall right now.
> Q.  Do you recall ever telling Mr. Collins that NFLPA was authorized
>     to use your name or likeness for licensing?
> A.  I don't recall.
> Q.  Did you ever tell Mr. Collins that [NFL PLAYERS] was
>     authorized to use your name or likeness for licensing?
> A.  I don't recall.
> Q.  Did you ever tell Mr. Collins . . . you agreed that [NFL
>     PLAYERS] could use your name or likeness for licensing?
> A.  I don't recall.

(SER-403.)  Free from Plaintiffs' distortions and omissions, the record is clear:

Jones did not have a single discussion, conversation, or communication with

Defendants with respect to licensing, image rights, duties owed, membership

solicitations, or an agency relationship.  (SER-60 ¶ 12, SER-402-05, SER-551-52.)

**Roberts:**  Roberts argues that he "reasonably believed that he did not have to

take any affirmative steps" to secure representation because he heard from friends

that his likeness appeared in a video at Epcot Center.  (Pls.' First Br. at 28.)  But

Roberts' admission on appeal that he "never formally expressed his 'consent' to

Defendants" is dispositive.  (*Id.*)  The district court properly ruled that, "[t]he fact

that Roberts has heard from his friends that his likeness has been used in video

games is not evidence that he indicated a desire for the NFLPA to act as his agent."

(ER-23.)  Roberts admitted at deposition that he never authorized anyone,

including Defendants, to use his likeness.  (SER-429 ("Q.  Did you ever authorize

anyone, whether [Defendants], or anyone else, that they could put your image in a

video game?  A.  No.").)  Moreover, Roberts admitted that he has never communicated with Defendants about licensing "in writing, by telephone, e-mail, in person, in any way."  (SER-60 ¶ 14, SER-424, SER-448, SER-558-59.)

*Parrish*:  Plaintiffs fail to cite evidence demonstrating Parrish's assent to a licensing relationship.  The only communications between Parrish and Defendants within the Actionable Period involved Parrish's alleged but unspecified "conversations with NFLPA employees about . . . licensing."[14]  (Pls.' First Br. at 26.)  The district court properly recognized that "there is no indication that Parrish used these conversations to express a desire for the NFLPA to enter into licensing agreements on his behalf."  (ER-023.)  Indeed, Parrish affirmatively testified that it was his intent *not* to enter a licensing agency agreement with Defendants.  (SER-59-60 ¶ 11, SER-447-48, SER-481 ("Q.  [Y]our intent and understanding at the time was that you not enter into this agreement and authorize the NFLPA to use your name and likeness, et cetera; correct? A.  Yes. [. . .]  Q.  [D]id you select one or both of the defendants to be your licensing agent?  A.  Did I select them?  It wouldn't make any difference.  They're representing me anyway. . . .  I mean,

---

[14]    Plaintiffs' lack of any relevant communications is unsurprising, as each holds deep-seated animosity towards Defendants and admitted that they do not trust Defendants to represent their interests.  (SER-61 ¶ 16, SER-366-67, SER-416, SER-422-23, SER-458-59, SER-482, SER-494-95 (Parrish's *Adderley* Dep. 98:16-99:1 ("Q. [I]t is your view that Mr. Upshaw should be compared to people like Caesar, Napoleon, Idi Amin, Hitler, Stalin, Milosevic and Saddam, correct, that's your view?  A. In my opinion, yes.  Absolutely, yes.")), SER-595-96 (Grant: "Those Devils [the NFLPA and NFL] will never voluntarily sit down with us . . .  I am convinced that they are sure that they can just fight us off until every single one of us is dead.").)  Parrish also testified that he believes his phone is being bugged and he suspects that the NFLPA is responsible.  (SER-456.)

they're selling my image whether I like it or not. . . . [T]hey were representing me whether I wanted them to or not."))).)

*Grant*:  Plaintiffs fail to identify a single action by Grant indicating his intention to enter into a licensing relationship with Defendants.  Plaintiffs point to Grant's interrogatory response, which cryptically states that he met with the NFLPA Executive Director "to discuss former player issues and other matters." (Pls.' First Br. at 25.)  In no way does Grant's self-serving response suggest that any of these conversations related to licensing in any respect.[15]

### (3) Plaintiffs Rejected Opportunities To Enter Into Express Licensing Agreements.

The record shows that Plaintiffs not only failed to assent to a licensing agency relationship, but they also affirmatively *rejected* opportunities to enter into express licensing agreements with Defendants.  Over a period of years, Defendants entered into GLAs with a number of former players, *e.g.*, 2,074 former players were members of the certified class in *Adderley*.  (SER-1125 n.1.)  Those players assented to an express relationship with Defendants based on a written agreement. In contrast, none of the Plaintiffs here entered into a GLA or other agreement with Defendants in effect during the Actionable Period.[16]

---

[15]     Grant did not sit for his deposition prior to the deadline for the Motion for Summary Judgment because he was undergoing medical treatment.  His subsequent testimony did not materially differ from that of the other Plaintiffs.

[16]     ER-486 ¶ 46; SER-61 ¶ 17, SER-363-64, SER-381-82, SER-400-01, SER-433, SER-439-40, SER-444-45, SER-480-81.

For instance, Parrish signed multiple GLAs as a former player, but the last one expired by its terms in 1998. (SER-207.) After that, Parrish intentionally rejected the opportunity to enter into another GLA based on his attorney's advice, by tossing it in the trash:

> Q. Was your not sending it to the NFLPA inadvertent?
> A. Oh, no. I didn't send it on purpose.
> Q. [ ] So you did not intend to – ultimately, it was your intent to not enter into this [ ] GLA?
> A. Right. I threw it away. Yeah. [. . .]
> Q. [Y]our intent and understanding at the time was that you not enter into this agreement and authorize the NFLPA to use your name and likeness, et cetera; correct?
> A. Yes. Since I didn't send – yes. Since I didn't execute it and send it in, I didn't intend to use it. Yeah.

(SER-475-77.)

Based on this uncontroverted record, no reasonable trier of fact could find that Plaintiffs assented to allow Defendants to act as their licensing agents. *See Exec. Sec. Mgmt. v. Dahl*, No. 09-9273, 2011 U.S. Dist. LEXIS 132538, at *41-42 (C.D. Cal. Nov. 15, 2011) (granting summary judgment where plaintiffs rejected defendant's offer to serve as agent).

Summary judgment was warranted based solely upon Plaintiffs' inability to establish this first essential element of assent in support of their claims.

> **b.     Plaintiffs Did Not Have Any Control Over Defendants' Purported Licensing Duties.**

Plaintiffs also cannot establish a triable issue with respect to the second essential element of their agency claim: there is no evidence showing that Plaintiffs could "control" Defendants' purported licensing activities.

24

"The law indulges no presumption that an agency exists." *ING Bank v. Ahn*, 758 F. Supp. 2d 936, 941 (N.D. Cal. 2010).  To survive summary judgment, Plaintiffs must present evidence capable of supporting an inference of Plaintiffs' "comprehensive and immediate level of 'day-to-day' authority" over Defendants' alleged licensing activities.  *Id.*  It is "the right to control the *means and manner* in which the result is achieved that is significant in determining whether a principal-agency relationship exists." *Cislaw v. Southland Corp.*, 4 Cal. App. 4th 1284, 1288 (1992).  Summary judgment is warranted where, as here, undisputed facts show that the principal has "no regular, direct dealings" with its agent, and "no say whatsoever in how the [agents] operate their day-to-day businesses." *Emery*, 95 Cal. App. 4th at 960; *accord Cislaw*, 4 Cal. App. 4th at 1297.

Plaintiffs did not present any evidence suggesting that they exercised any supervision or provided any direction as to the "means and manner" of Defendants' purported licensing duties.  Plaintiffs, as noted, did not regularly communicate with Defendants with respect to licensing during the Actionable Period.[17]  Roberts, for instance, testified that he (i) never told Defendants how to go about trying to license his image rights; (ii) never asserted any control over what Defendants did in terms of licensing; (iii) never had any right to control what Defendants did in terms of licensing; and (iv) never tried to exert control over Defendants in terms of licensing.  (SER-446-47.)

---

[17]    SER-60-61 ¶¶ 12-16, SER-352-53, SER-356-57, SER-366-67, SER-402-05, SER-416, SER-422-24, SER-448, SER-457-59, SER-470, SER-482-83, SER-494-95, SER-543-44, SER-551-52, SER-558-59, SER-594, SER-605, SER-616.

Plaintiffs could not point to any written document or oral communication reflecting, or even hinting, that the parties reached an understanding regarding the terms of any licensing agency relationship, such as: (i) what Defendants were required to do; (ii) how Defendants were to do it; (iii) the length of the engagement; (iv) how much money Plaintiffs would receive; (v) Defendants' commission; (vi) whether Defendants had exclusive or nonexclusive rights; or (vii) how to terminate the engagement. Plaintiffs cannot identify even the most basic contours of the licensing relationship into which, they insist, both sides freely entered. The district court properly ruled that no evidence of Plaintiffs' control or authority was presented. (ER-22.)

Faced with this reality, Plaintiffs argue on appeal that they had a latent "right to control" Defendants' licensing activities based on a legal theory drawn whole cloth. They suggest the axiomatic argument that, because "each individual 'controls' their own right of publicity," it follows "that the licensor of another's name and likeness must cease doing so if instructed to." (Pls.' First Br. at 32.) Plaintiffs fail to cite to any supporting authority for this "natural corollary." (*Id.*) They instead cite to two wholly inapposite cases discussing California's statutory right of publicity. (*Id.* (citing *Winter v. DC Comics*, 30 Cal. 4th 881 (2003); *Lugosi v. Universal Pictures*, 25 Cal. 3d 813 (1979)).) Plaintiffs' sleight of hand should be rejected: the proper inquiry is whether Plaintiffs had the right to control the manner and means of Defendants' activities in the context of the purported licensing relationship, not whether Plaintiffs could control their own publicity

26

rights as against the world.  Plaintiffs offer no basis to conclude that they had any right to control Defendants.

Plaintiffs failed to demonstrate any indicia of control over their purported licensing relationship with Defendants.

### c.     Defendants Did Not Consent To Act As Plaintiffs' Licensing Agents.

Plaintiffs also fail to create a triable issue as to the final essential element of an agency relationship regarding whether Defendants manifested their consent to act as Plaintiffs' marketing agents subject to Plaintiffs' control.  *See St. Paul Ins. Co. v. Indus. Underwriters Ins. Co.*, 214 Cal. App. 3d 117, 122 (1989).  To the contrary, from the filing of the *Adderley* action in 2007 – more than four years prior to the filing of Plaintiffs' initial complaint – Defendants have steadfastly, affirmatively, explicitly, openly, and publicly repeated, in no uncertain terms, in court documents and elsewhere, that they have no duty to Plaintiffs for purposes of licensing.[18]  This is undisputed notice that Defendants never consented to act as Plaintiffs' purported licensing agents for any part of the Actionable Period.

Not only were Defendants' intentions broadcast to the world, Plaintiffs in particular heard and understood Defendants' position in *Adderley* that they did not represent former players for purposes of licensing, whether they had a GLA or not.[19]  Besides barring the creation of any agency relationship, Defendants' consistent and unequivocal renunciation of any duty to Plaintiffs would effectively terminate any purported agency relationship.  *See* Cal. Civ. Code § 2355 ("An

---

[18]     SER-62 ¶ 23, SER-148, SER-161-63, SER-165, SER-188-89 & n.2, SER-218-20, SER-237, SER-247.

[19]     SER-61-62, SER-107, SER-368-69, SER-396-99, SER-415, SER-432-33, SER-435-38, SER-448, SER-473-74, SER-492-93, SER- 496-503, SER-599.

agency is terminated, as to every person having notice thereof, by . . . the agent's renunciation of the agency.").

Plaintiffs point to no manifestations by Defendants sufficient to establish a licensing agency relationship in light of Defendants' consistent denials. Plaintiffs rely instead on vague statements from NFLPA officers to third parties regarding "representing" or having "access" to unspecified players. (Pls.' First Br. at 30.) Even if credited, none of these statements to third parties suggest that Defendants consented to represent these specific Plaintiffs for purposes of licensing.[20] *See Whisper Soft Mills, Inc. v. N.L.R.B*, 754 F.2d 1381, 1386 (9th Cir. 1984) ("The agent's consent must be manifest and is evidenced by, *inter alia*, the actual dealings between the parties."); *Sun Microsys. Inc. v. Hynix Semiconductor Inc.*, 622 F. Supp. 2d 890, 899 (N.D. Cal. 2009) (requiring an "understanding *between* the parties") (emphasis added). Plaintiffs' general sound bites also fail to demonstrate the terms of the licensing agency relationship to which Defendants purportedly agreed.

Additionally, Plaintiffs point to Defendants' membership solicitations as evidence of Defendants' assent to act as Plaintiffs' licensing agent. The solicitations only offer former players an opportunity for membership in the

---

[20]     Plaintiffs also continue to espouse unsupported, erroneous, and irresponsible statements that Defendants actually licensed the image rights of Plaintiffs and other former players without permission. (Pls.' First Br. at 31.) There is no factual basis for Plaintiffs' allegations. It is undisputed that Defendants have taken no action on behalf of Plaintiffs with respect to licensing. (ER-382; SER-64 ¶ 31, SER-100 ¶¶ 3-4, SER-522-23, SER-530, SER-539, SER-579.) Moreover, Plaintiffs concede that Defendants have not received any request from any licensee to reach out to Parrish, Grant, Roberts, Cobb, or Jones during the Actionable Period. (ER-382; SER-64 ¶ 30, SER-100 ¶ 2, SER-531-33.) Defendants have never consented to act as licensing agents for all former players.

NFLPA (which was rejected by most of the Plaintiffs). None of the solicitations mention group licensing as a benefit of NFLPA membership. (SER-625.)

The uncontroverted facts establish that Defendants never consented to act as Plaintiffs' licensing agents.

### d.    Plaintiffs Are Not In Privity With NFL PLAYERS.

Apart from the glaring defects described above, Plaintiffs failed to connect their allegations to any legal relationship between themselves and Defendant NFL PLAYERS sufficient to give rise to an agency relationship or fiduciary duties. Plaintiffs have no privity with NFL PLAYERS, and Plaintiffs' theory, based on (presumed) membership and interaction with the *NFLPA*, does nothing to show Plaintiffs' manifestation of assent for *NFL PLAYERS* to represent them (or NFL PLAYERS' consent). (SER-933.) NFL PLAYERS is a distinct entity from the NFLPA. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (general principle of corporate law that parent is not liable for acts of subsidiaries). Moreover, NFL PLAYERS is not involved in any efforts to have former players pay membership dues. (SER-592-93.) As the district court noted, there is no demonstrable connection between NFLPA members and NFL PLAYERS giving rise to fiduciary duties. (ER-24-25.) An additional unjustified leap of logic is required to suggest that NFL PLAYERS has a duty to these Plaintiffs.

### 2.    Plaintiffs' Novel Argument Regarding Defendants' Putative "Admission" Of A Fiduciary Duty Fails.

Plaintiffs could not muster a triable issue of fact before the district court as to whether Defendants owed them a fiduciary duty with respect to licensing by

establishing the elements of an agency relationship. Now, on appeal, Plaintiffs'
primary argument is that an unauthenticated, out-of-context statement attributed to
NFLPA Executive Director DeMaurice Smith somehow constitutes a binding
admission sufficient to establish a jury question regarding the existence of a
fiduciary duty with respect to licensing.[21] (Pls.' First Br. at 13.) This argument is
a *non sequitur*.

First, Plaintiffs did not raise this argument in the district court. Thus,
Plaintiffs' lead argument on appeal is waived. Second, the argument is not
supported by admissible evidence. Third, the argument fails on the merits; the
existence and scope of a fiduciary duty to engage in licensing is a question of law
that can only be determined on the basis of actual facts giving rise to, and defining,
such duty – it cannot be established by an "admission" of some inchoate fiduciary
obligation that bears no relationship to any facts supporting the existence of a
bilateral licensing agency relationship – *i.e.*, it changes nothing discussed in the
preceding sections that mandate summary judgment for Defendants here.

Accordingly, Plaintiffs' principal argument on appeal must be rejected.
Plaintiffs cannot shortcut the element-by-element approach to determining whether
an agency relationship giving rise to a fiduciary duty exists in this action solely by

---

[21]    The writing – a blog post dated April 24, 2009 – stated as follows: "Newly
elected NFLPA Executive Director DeMaurice Smith spoke with reporters in New
York today and said the union has a fiduciary duty to retired players, which is in
stark contrast to comments from his predecessor Gene Upshaw, who famously said
he only represented active players while collecting union dues from retired
players." (ER-314.) Smith's exact words are not provided. Factually, this
purported statement was made with absolutely no connection to Plaintiffs'
licensing claims in this action.

pointing to an out-of-context blog post that is wholly irrelevant to elements in the analysis. (*See supra* Sect. I.A.1.) The alleged "admission" is insufficient to create a triable issue with respect to Plaintiffs' breach of fiduciary duty claim.

### a. Plaintiffs' Argument Was Not Raised In The District Court And Should Be Considered Waived.

In the district court, the *only* basis Plaintiffs advanced for imposing a fiduciary duty was the existence of an alleged agency relationship. (ER-395-409.) The agency analysis, presented above, involves a factual analysis of three discrete elements, relating to whether each party understood and agreed to the scope of a particular agency representation. On appeal, Plaintiffs posit for the first time a shortcut approach to determining whether a fiduciary duty exists, by claiming that hearsay, out-of-context, unilateral statements attributed to an officer of Defendants constitute binding admissions, as a matter of law, that are sufficient to override the vast factual record. Plaintiffs argue that the "Court need look no further than NFLPA Executive Director DeMaurice Smith's comments in 2009 . . . . This admission itself should suffice to create an issue of fact as to whether a fiduciary duty exists." (Pls.' First Br. at 18-19.) To the extent Plaintiffs are arguing unilateral conduct and words by Defendants are sufficient by themselves as a matter of law to establish a triable issue with respect to the existence of a fiduciary duty – it is a novel argument not presented to the district court and is thus waived.

Absent extraordinary circumstances, the Court "will not consider arguments raised for the first time on appeal." *Baccei v. United States*, 632 F.3d 1140, 1149 (9th Cir. 2011). To be considered on appeal, "the argument must be raised

sufficiently for the trial court to rule on it." *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989). Even alternative theories to pleaded causes of action are considered waived unless first properly raised in the district court. *See King v. AC & R Advertising*, 65 F.3d 764, 769 n.1 (9th Cir. 1995).

Prior to this statement becoming the centerpiece of their appeal, Plaintiffs made only a passing reference to an "admission" in their opposition to Defendants' Motion for Summary Judgment in a section discussing the element of breach, after spending a majority of their brief discussing the discrete elements necessary to demonstrate an agency relationship:

> Defendants do not, nor can they, dispute that if an agency relationship exists between the parties in this case, so too does a fiduciary relationship. As discussed above, there is more than enough evidence on the record to establish the existence of an agency relationship between Plaintiffs and Defendants, and therefore a fiduciary relationship. . . . Not to mention that the NFLPA's executive director, DeMaurice Smith, has readily and publicly admitted that the NFLPA owes a fiduciary duty to its retired members.

(ER-407.) However, nowhere did Plaintiffs argue or even hint that the statement alone was sufficient to establish a fiduciary duty as a matter of law, nor do they cite any authority to that effect. Because Plaintiffs never placed their novel argument at issue as a basis to oppose the grant of summary judgment, the district court could not and did not reach it, and it should be considered waived.

**b.     The Evidence Of The "Admission" Is Inadmissible.**

Plaintiffs' new argument, even if considered, cannot be credited because it is not based on competent evidence. *See Anderson v. City of Bainbridge Island*, 472 Fed. App'x 538, 539 (9th Cir. 2012) ("To raise a genuine issue of material fact, the

assertion made by the non-moving party must be properly supported by admissible evidence.").  As argued in Defendants' (i) timely evidentiary objection, (ii) reply in support of their summary judgment motion, and (iii) motion *in limine* in the district court, the writing supposedly containing the admission is inadmissible because it is (i) unauthenticated and (ii) constitutes double hearsay.  (SER-29, SER-39 n.15, SER-41.)

Proper authentication is a condition precedent to admissibility of evidence. *See Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007) (citing Fed. R. Civ. P. 56(e)); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988). To properly authenticate a document, a "proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  "A writing is not authenticated simply by attaching it to an affidavit . . . The foundation is laid for receiving a document in evidence by the testimony of a witness with personal knowledge of the facts who attests to the identity . . . of the document."  *Beyene*, 854 F.2d at 1182; *accord Orr v. Bank of Am.*, 285 F.3d 764, 773-74 (9th Cir. 2002) (finding inadmissible a "true and correct copy" of writings attached to attorney affidavit for lack of personal knowledge).

Plaintiffs submitted the Smith statement by attaching to their counsel's declaration a summary of the statement from an anonymous blog post on a third-party website.  (ER-33.)  Plaintiffs have not provided evidence that the writing is what it purports to be:  a factual account of comments made by Smith or the blogger.  The website printout is not self-authenticating – *Martinez v. Am.'s Wholesale Lender*, 446 Fed. App'x 940, 944 (9th Cir. 2011); *Victaulic Co. v.*

*Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) – and the supporting declaration from Plaintiffs' counsel fails to authenticate the writing.  The declaration simply states: "Attached hereto as Exhibit 20 is a true and correct copy of an April 24, 2009 RetiredPlayers.Org article entitled 'New NFLPA Executive Director:  "Union Has a Fiduciary Duty to Retired Players."'"  (ER-33 ¶ 22.)  The declaration provides no facts from which it can be determined that their attorney had personal knowledge regarding the veracity of the writing.  There is no indication of where the article came from, what it is based on, who drafted the article, when it was drafted, when it was printed, and whether it was modified or altered by others.  The declaration fails to establish the authenticity of the writing.

The writing also constitutes inadmissible hearsay within hearsay.  The blog post is an out-of-court statement written by an anonymous blogger, *summarizing* a putative out-of-court statement by Smith, and is offered for the truth of the matter asserted.  (ER-314.)  This double hearsay evidence cannot be credited.  *See Beyene*, 854 F.2d at 1183; *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 n.4 (9th Cir. 1995); *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 667 (9th Cir. 1980); *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008) ("'When an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay, the statement may not be used to support or defeat a motion for summary judgment.'"); Fed. R. Evid. 802 & 805.  There is no way to test the reliability of the anonymous author's recollection and summation of Smith's supposed comments (which facially appear to be based on

second-hand accounts), and whether it relates to licensing in any respect.  Plaintiffs

offer no basis for allowing this unattributed hearsay into evidence.

### c.    The Alleged "Admission" Cannot Establish A Legal Conclusion Regarding Fiduciary Duties.

Plaintiffs' argument also fails on the merits:  Plaintiffs cannot establish the

existence of a fiduciary duty based solely on the supposed party admission.

Federal Rule of Evidence 701 requires that for lay testimony to be

admissible, it must relate to an issue of fact, not law.  Fed. R. Evid. 701 ("If a

witness is not testifying as an expert, testimony in the form of an opinion is limited

to one that is . . . helpful to clearly understanding the witness's testimony or to

determining a *fact in issue*[.]") (emphasis added).  Courts routinely reject attempts

by plaintiffs to bind defendants to admissions regarding legal conclusions.  *See*

*Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1398 (9th Cir.

1985); *see also Eagleston v. Guido*, 41 F.3d 865, 874 (2d Cir. 1994); *Torres v.*

*Cnty. of Oakland*, 758 F.2d 147, 150-151 (6th Cir. 1985).

In particular, the existence of a fiduciary duty – a question of law – cannot

be established by a purported "admission" of the existence of such a duty.  *See*

*Christiansen v. Nat'l Sav. & Trust Co.*, 683 F.2d 520, 529 (D.C. Cir. 1982) ("The

existence of fiduciary duties . . . is a legal conclusion.  The duty to issue such

conclusions devolve on the courts and lay legal conclusions are inadmissible in

evidence.  The presence of this resolution therefore does not create fiduciary duties

running to subscribers from the directors of nonprofit corporations where

otherwise none are found to exist.") (citations omitted); *Smith v. Goodyear Tire &*

*Rubber Co.*, 856 F. Supp. 1347, 1354-55 (W.D. Mo. 1994) ("Defendant states that the facts do not show a fiduciary duty and [its employee's] statements cannot create a fiduciary duty. . . . [Defendant's employee's] characterization of the relationship is not a substitute for facts establishing a fiduciary relationship. Plaintiffs have not presented facts from which the elements necessary to show a fiduciary duty . . . could be inferred. On this record, [the employee's] testimony, even evaluated in the light most favorable to plaintiffs, does not create an issue of material fact as to the existence of a fiduciary duty.").[22]

A party thus cannot admit the existence of a fiduciary duty. At most, a statement can be offered as factual evidence in support of certain elements of a plaintiff's claim for breach of fiduciary duty. But the "admission" here does nothing to help establish *Plaintiffs'* assent to an agency relationship under their pleaded theory (ER-22). *See Hanks*, 250 Cal. App. at 163 ("Words or conduct by both principal and agent are necessary to create the relationship[.]"). Plaintiffs' reliance on the Smith statement fails to create a triable issue of fact – either independently or within the context of the agency analysis.

---

[22]    *See also Millette v. DEK Techs., Inc.*, No. 08-60639, 2009 U.S. Dist. LEXIS 93908, at *17-18 (S.D. Fla. Oct. 8, 2009) (finding that a party admission regarding the existence of a duty was not binding because it was a legal conclusion); *In re S.W. Bach & Co.*, No. 07-11569, 2010 Bankr. LEXIS 464, at *21-22 (Bankr. S.D.N.Y. Feb. 24, 2010) (finding that the "extent, if any, of the fiduciary duties owed . . . is a complicated legal question" and thus the request for admission "unacceptably call for legal conclusions relating to ultimate legal issues in the case that should not be decided at this juncture by deemed admission").

**B.     Plaintiffs Did Not Establish A Breach Of Fiduciary Duty.**

Besides the lack of any cognizable licensing agency relationship giving rise to a fiduciary duty, summary judgment was properly entered because Plaintiffs failed to present evidence of any breach of the purported fiduciary duty.  The record reveals that the only alleged wrongful act or omission is that Defendants failed to compensate them "for appearing in video games."  Plaintiffs offered no credible (let alone admissible) evidence that Defendants committed the alleged acts.[23]  (SER-62 ¶ 24, SER-546, SER-553, SER-560, SER-566, SER-572.)  With respect to the Actionable Period, plaintiffs have no competent evidence (i) that they have appeared in video games (*they did not*), (ii) that Defendants authorized Plaintiffs' appearance in the games (*they did not*), or (iii) that Defendants received any revenues from such appearances (*they did not*).  Plaintiffs admit that their sole basis for this allegation is limited to second-hand accounts from friends and family, who claim to have seen them in various versions of Electronic Arts, Inc.'s Madden

---

[23]     Roberts also stated in his discovery responses that he "is informed and believes that his image was also used in a video being played at the Epcot Center in Florida for which he was never compensated."  (SER-63 ¶ 25, SER-431-33, SER-560.)  Yet Roberts never saw this video, and attributed it to AT&T, not Defendants.  (*Id.*)  Likewise, Parrish's claim that he has not been "compensated" for appearing on trading cards (SER-63 ¶ 26, SER-566) did not arise within the Actionable Period.  Parrish's allegation relates to trading cards he receives in the mail from individual fans, which he voluntarily signs and returns.  (SER-471-72.)  Without any factual basis, he testified that he "assumed" that the NFLPA had a part in deals with card companies for which he expects compensation.  (SER-466.)  This assumption is false and entitled to "no weight" on summary judgment.  *Taylor v. List*, 880 F.2d 1040, 1045 & n.3 (9th Cir. 1989).  Parrish's image has not been used, or authorized for use, in trading cards at any point during the Actionable Period.  (SER-100 ¶ 6.)  There is no evidence that a new Parrish trading card has been made in more than 40 years.

NFL video game franchise.[24]  Plaintiffs' unsubstantiated hearsay cannot create a triable issue of fact.  *See Blair*, 610 F.2d at 667.

Plaintiffs also have no factual basis for claiming that the alleged breaches occurred during the Actionable Period.  Even the hearsay statements on which Plaintiffs rely relate to purported uses of their image rights from before the Actionable Period.  (SER-63 ¶ 27, SER-370-71, SER-442-43, SER-469 (citing Cobb Dep. 128:24-129:2 (referring to use of the 1981 Cincinnati Bengals in the "2004 edition" of Madden as the only purported use of his image that he is aware of); Roberts Dep. 88:14-89:4 (admitting he is unable to testify whether the hearsay statements regarding his appearance in Madden was within the past five or even ten years); Parrish Dep. 99:7-20 (referring to his appearance in Madden as shown "in the documents of the *Adderley* case [covering the period from February 14, 2003 to February 14, 2007]")).)  Plaintiffs cannot identify a single relevant breach purportedly occurring since April 13, 2007.

Even if Plaintiffs' naked assertion that they "appear[ed] in video games" could be credited (it cannot), there is no evidence that Defendants had any role in that appearance.  Defendants have not received any revenue related to the use of Plaintiffs' image rights.  (SER-63 ¶ 29, SER-100 ¶ 5, SER-508-10, SER-577-78, SER-588-89.)  There is simply no evidence that Defendants breached any purported duty to Plaintiffs.  This Court should affirm.

---

[24]     ER-380; SER-63 ¶¶ 27, 28, SER-369-371, SER-379-80, SER-413-14, SER-425, SER-428, SER-442-43, SER-466, SER-468-69.

## II.    The Court Should Affirm The Order Enforcing The Deadline To Move For Class Certification.

The district court did not abuse its discretion by enforcing the deadline for Plaintiffs to move for class certification.  Therefore, even if this Court finds that Plaintiffs' claims should survive summary judgment, the action can only proceed as an individual action.

Plaintiffs missed the deadline to file a Motion for Class Certification in the underlying action imposed by Local Rule 23-3.  (*See* ER-028.)  Subsequently, Plaintiffs filed an *ex parte* application for an order setting a briefing schedule on class certification, which the district court denied.  (*Id.*)  Because the district court's denial of Plaintiffs' application was (i) justified based on the deferential application of the "abuse of discretion" standard and, in any event, (ii) constitutes harmless error, the court's decision should be upheld.

### A.    The District Court Did Not Abuse Its Discretion.

The district court was justified in enforcing Local Rule 23-3, which provides as follows:

> Within 90 days after service of a pleading purporting to commence a class action . . . the proponent of the class shall file a motion for certification that the action is maintainable as a class action, unless otherwise ordered by the Court.

C.D. Cal. L.R. 23-3.  "Local rules are laws of the United States, and valid if . . . not inconsistent with the Federal Rules of Civil Procedure."  *United States v. Comprehensive Drug Testing, Inc.*, 473 F.3d 915, 927 (9th Cir. 2006) (quotations and citations omitted); *accord Marshall v. Gates*, 44 F.3d 722, 724 (9th Cir. 1995).

Plaintiffs do not challenge the validity of Rule 23-3.[25]  Instead, Plaintiffs claim that the district court abused its discretion by applying Rule 23-3 according to its plain terms.[26]  "[T]he decision of a trial court is reversed under the abuse of discretion standard only when the appellate court is convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir. 2000).  Deference is warranted, in particular, when a district court enforces established deadlines:

> The abuse of discretion standard is deferential, and properly so, since the district court needs the authority to manage the cases before it efficiently and effectively.  In these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases.  Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines.  Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions[.]

*Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005); *accord Grandson v. Univ. of Minn.*, 272 F.3d 568, 574 (8th Cir. 2001).

---

[25]    The district court's authority to establish a deadline to move for class certification is undisputed, well-known, and chronicled in leading treatises. *See, e.g.*, Charles Wright *et al.*, Federal Practice and Procedure § 1785.3 (3d ed. 2004); William Schwarzer *et al.*, Federal Civil Procedure Before Trial, 9th Cir. ed. § 10:564 (2012).

[26]    Defendants concur with Plaintiffs that an "abuse of discretion" standard applies here. *See Watson v. Schwarzenegger*, 347 Fed. App'x 282, 284-285 (9th Cir. 2009); *Jorgensen v. Cassiday*, 320 F.3d 906, 913 (9th Cir. 2003). Defendants note, however, that Plaintiffs frame the issue as whether a "district court's decision to grant or deny class certification is reviewed for an abuse of discretion." (Pls.' First Br. at 12.)  The district court did not grant or deny class certification in this action.  The district court's order instead denied Plaintiffs' *ex parte* application to allow the filing of a Motion for Class Certification after the deadline had long passed.  (ER-28.)

40

The Ninth Circuit has repeatedly upheld district court decisions enforcing Rule 23-3. *See Archila v. KFC U.S. Props.*, 420 Fed. App'x 667, 668 (9th Cir. 2011); *Watson v. Schwarzenegger*, 347 Fed. App'x 282, 284-285 (9th Cir. 2009); *see also Burkhalter v. Montgomery Ward & Co.*, 676 F.2d 291, 294 (8th Cir. 1982). The Court recognizes that even honest mistakes in interpreting Rule 23-3 cannot automatically constitute excusable neglect and render any decision to enforce a deadline an "abuse of discretion." *See Watson*, 347 Fed. App'x at 284-85 ("The district court did not abuse its discretion in denying Watson's motion for relief from Local Rule 23-3 because Watson's unfamiliarity with the local rules and unnecessary delay in filing his motion did not constitute excusable neglect.").[27] "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993).

The test for abuse of discretion involves a two-step inquiry: (i) the Court determines *de novo* "whether the trial court identified the correct legal rule to apply to the relief requested"; and (ii) "a trial court abuses its discretion if its application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009). Plaintiffs do not contend that the district court analyzed their request under the wrong legal standard. Thus, they

---

[27]     *See also Fournier v. Creditors Interchange Receivable Mgmt., LLC*, No. 10-3220, 2011 U.S. Dist. LEXIS 32303, at *4-5 (C.D. Cal. Mar. 16, 2011); *Verner v. Swiss II, LLC*, No. 09-5701, 2010 U.S. Dist. LEXIS 4443, at *3-4 (C.D. Cal. Jan. 6, 2010).

must establish that the district court's decision to enforce a published filing deadline was "illogical," "implausible," or unsupported by the record. *Id.*

Federal Rule of Civil Procedure 6(b) provides a basis for extending Rule 23-3. *See* Fed. R. Civ. P. 6(a)-(b). Rule 6(b) grants a district court discretion to extend a deadline "for good cause . . . if the party failed to act because of excusable neglect." Plaintiffs present no evidence that the district court abused its discretion by refusing to extend the deadline imposed by Rule 23-3. Plaintiffs' only defense is that their failure to abide by the rule was due to "genuine confusion" based on a series of scheduling events. (Pls.' First Br. at 35.) Plaintiffs' confusion over the schedule did not require the district court to excuse a missed deadline.

Plaintiffs filed their initial complaint on April 13, 2011. (ER-531.) On May 5, 2011, the district court entered a stipulation setting a briefing schedule for Defendants' anticipated Motion to Dismiss based on statute of limitations concerns. (SER-18.) The stipulation recognized the binding Rule 23-3 deadline and provided that it would be tolled until the district court ruled on the motion. (SER-19.) Prior to the filing of the motion, however, Plaintiffs voluntarily agreed to amend their complaint.

Plaintiffs' amended complaint was filed on June 10, 2011. (ER-472.) Subsequently, the parties again submitted a stipulation setting a briefing schedule for a Motion to Dismiss, and tolling the Rule 23-3 deadline. The district court, however, struck the provision providing for the tolling of Rule 23-3 with respect to the Amended Complaint and prominently noted the change on the face of its Order, dated June 17, 2011. (SER-16.) Plaintiffs took no further action with

respect to the Rule 23-3 deadline until October 5, 2011 – 117 days after the filing of their amended complaint – when they filed a stipulation requesting the setting of a briefing schedule for their Motion for Class Certification.  (SER-966.)  The district court rejected the stipulation pursuant to its June 17 Order.  (SER-6.)  Plaintiffs filed another stipulation on October 14, 2011, which was again denied on October 17, 2011 pursuant to the court's June 17 Order.  (ER-448; SER-2.)

The next day, Plaintiffs filed the Class Certification Application.  (SER-936.)  Plaintiffs argued that good cause existed to set a briefing schedule.  The district court denied the application finding unavailing "Plaintiffs' arguments that [they] believe[d] the May 5 Order [tolling Rule 23-3] to still be in effect."  (ER-028.)  The court's factual finding should not be disturbed.

The crux of Plaintiffs' appeal is their belief that the initial order tolling the Rule 23-3 deadline continued to apply even after the amendment of their Complaint, and the district court's rejection of subsequent tolling agreements.  As a matter of law, however, an amended complaint supersedes the original and renders all orders and motions related to that pleading moot.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989); *see, e.g.*, *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1101 (S.D. Cal. 2006).  As the district court stated in its order, "[a]ny changes to the briefing schedule authorized by the Court in the May 5 Order were rendered moot once the Plaintiffs filed the [amended complaint]."  (ER-28.)  Upon the filing of the amended complaint – "a pleading purporting to commence a class action" – the 90 day clock began to run, and expired on September 8, 2011.  C.D. Cal. L.R. 23-3.

43

Plaintiffs implicitly recognized this point; their repeated requests for tolling of the Rule 23-3 deadline *after* the filing of their amended complaint (ER-448; SER-936, SER-966) would have been unnecessary had the initial order still been in effect. At the very least, the district court's June 17 denial of Plaintiffs' request to toll Rule 23-3 with respect to the amended complaint placed Plaintiffs on notice that the May 5 Order may no longer have been operative. (SER-15.) Plaintiffs failed to seek clarification regarding the court's orders or an extension regarding Rule 23-3 until long after the deadline passed.

Tellingly, Plaintiffs fail to cite any authority for the proposition that the district court's unwillingness to excuse their confusion in construing orders constituted an abuse of discretion. Nor could they; as noted above, the Ninth Circuit repeatedly has upheld district court decisions enforcing Rule 23-3. Logic and fairness dictate that district courts must have the power to enforce published deadlines and efficiently manage their dockets. Because the district court's order was not illogical, implausible, or unsupported by the record, the district court did not abuse its discretion by enforcing Rule 23-3.

**B.    The Order Caused No Prejudice.**

Even if the Court determines that the district court abused its discretion, any such error was harmless and did not prejudice Plaintiffs', or any putative class's, rights. *See* 28 U.S.C. § 2111; *Obrey v. Johnson*, 400 F.3d 691, 699 (9th Cir. 2005) ("[J]udicial error alone does not mandate reversal. Rather, in order to reverse, we must find that the error affected the substantial rights of the appellant[.]"). In direct response to the district court's enforcement of Rule 23-3, Plaintiffs' counsel

filed a related action captioned *Brown v. NFLPA*. (RJN, Ex. A.) In that case, Plaintiffs' counsel timely made a Motion for Class Certification on behalf of a class of former football players, *including* Plaintiffs. (RJN, Ex. B.) The motion was fully briefed, adjudicated, and denied on the merits – under Federal Rule of Civil Procedure 23(b)(3) – because "individual issues predominate[d] over common ones" with respect to the purported class's agency theory. *Brown*, 281 F.R.D. at 443-44 (RJN, Ex. C).

The operative allegations in both actions, including the class definition, were substantially identical. (*Compare* ER-472 *with* RJN, Ex. A.) A class certification motion in this action – involving indistinguishable claims, theories, and allegations as in *Brown* – would have failed for the same reason. As the same district court ruled in *Brown*: any determination as to the rights of former players, based on an agency relationship, "would require an individualized analysis" regarding "each retired player's manifestation of consent for Defendants to act on his behalf." *Brown*, 281 F.R.D. at 444. The same inquiry would have been necessary in this action. The individualized factual analysis necessary to establish Plaintiffs' case makes the action unsuitable for class treatment. In short, Plaintiffs – and the putative class – had their day in court on this issue through their attorneys and fellow putative class members.

The district court's enforcement of Local Rule 23-3 was neither an abuse of discretion nor prejudicial, and Plaintiffs' appeal of this issue should be denied.

**III.   Plaintiffs' Claims Are Barred By The Statute Of Limitations.**

In addition to the reasons stated above, the district court's summary judgment order should be upheld on the independent ground that Plaintiffs' claims are barred by the statute of limitations.

This Court reviews *de novo* a district court's decision as to whether a statute of limitations bars a claim. *Hensley v. United States*, 531 F.3d 1052, 1056 (9th Cir. 2008). The district court did not rely on Defendants' statute of limitations defense in entering judgment, but this Court may affirm the judgment "on any ground supported by the record, even one not relied on by that court." *Nw. Envt'l Def. Ctr. v. Brown*, 640 F.3d 1063, 1080 (9th Cir. 2011). As argued in Defendants' Motion to Dismiss and Motion for Summary Judgment, it is evident from the face of Plaintiffs' complaint that (i) they failed to timely file their action, and (ii) their theory of "continuing" breaches of fiduciary duty cannot prevent the application of the time bar. (SER-71, SER-1021.) The district court denied Defendants' Motion to Dismiss, and did not reach the issue in Defendants' Motion for Summary Judgment. (SER-9; ER-20.) As an alternative to the discussion above, the district court's entry of final judgment can be sustained on this independent basis.

**A.     Plaintiffs Filed The Action More Than Four Years After *Adderley*.**

Plaintiffs' breach of fiduciary duty claims are time-barred because they accrued prior to April 13, 2007 – four years before Plaintiffs filed this action.

It is undisputed that Plaintiffs' claims for breach of fiduciary duty are subject to, at most, a four-year limitations period. *See* Cal. Civ. Proc. Code § 343. (SER-973 n.1; *see also supra* n.12.) A limitation period begins "when a cause of

action accrues, *i.e.*, all essential elements are present and a claim becomes legally actionable." *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1029 (2000). Plaintiffs' alleged claims became "actionable" more than four years ago prior to the filing of this action, as evidenced by the filing of *Adderley*.

The *Adderley* action was filed on February 14, 2007 by Plaintiff Parrish and others on behalf of former players. (SER-977 ¶ 1, SER-981-82 ¶ 1, SER-984 ¶ 10.) *Adderley* involved claims for breach of fiduciary duty, and a demand for an accounting, for failure to pursue licensing opportunities and allocate licensing revenue to former players. (SER-977 ¶ 1, SER-982 ¶ 3, SER-986-87 ¶ 17 ("Defendant has violated its fiduciary duties to the 3,500 players it says it represents").) The *Adderley* complaint contained allegations regarding NFL PLAYERS' obligations to a class of former players that NFL PLAYERS claimed to represent and from whom NFL PLAYERS solicited "image rights." (SER-976-77 ¶ 1, SER-982-83 ¶ 4, SER-984-85 ¶ 12 ("Plaintiffs seek an accounting of the funds received and distributed by Defendant in connection with its claimed representation of them.").) Thereby on notice of their claims now raised here, Plaintiffs' claims became actionable at least as of the time of the filing of *Adderley*.

This notice is beyond dispute. Indeed, Plaintiffs have premised this action on the fact that they were "excluded from the settlement in the *Adderley* Action on the grounds that they did not have and/or did not produce a signed GLA." (ER-

473-74.)  This action is entirely an effort by a group of individuals who felt "excluded" from *Adderley* from relitigating claims brought in February 2007.[28]

While *Adderley* ultimately only addressed the rights of former players who executed GLAs, Plaintiffs cannot argue that did not know to file this action by February 2007 given other similarities to *Adderley* (*e.g.*, fiduciary duty cause of action with respect to licensing).  (ER-473; SER-1129.)  There was also extensive national media coverage accompanying the filing of the initial *Adderley* complaint in 2007.  (*See, e.g.*, SER-977 ¶¶ 3-5, SER-995-1005.)  Indeed, each Plaintiff admitted that he personally followed the *Adderley* action.[29]  Plaintiffs Roberts, Cobb, and Parrish even admitted that they understood Defendants' position in *Adderley* that they did not represent former players for purposes of licensing.[30]

Accordingly, Plaintiffs' claims are time-barred based on Plaintiffs' actual and constructive knowledge of the *Adderley* action against Defendants.

**B.     The "Continuing Wrong" Exception Does Not Apply To Plaintiffs' Breach Of Fiduciary Duty Claims.**

Plaintiffs cannot explain why they failed to bring suit sooner in light of *Adderley*.  Plaintiffs expressly disclaimed any argument that the statutory period was tolled, and never argued that they could not otherwise bring their claims

---

[28]     Plaintiffs in this action each also were named plaintiffs in *Parrish* – the action against class counsel in *Adderley* for leaving them out of *Adderley*.  (SER-978 ¶ 8, SER-1006; *see supra* n.1.)

[29]     ER-378; SER-368-69, SER-378, SER-396-99, SER-415, SER-432, SER-436, SER-473, SER-599.

[30]     ER-378; SER-369, SER-435, SER-437-38, SER-448, SER-474, SER-492-93, SER-496-503.

during the limitations period. (SER-973.) Instead, Plaintiffs argued that, although their claims initially accrued outside the limitations period, they still can proceed with their action because they are only seeking recovery for breaches occurring within the limitations period. (*Id.*) This "continuing wrong" theory[31] is inapplicable to Plaintiffs' claim for breach of fiduciary duty.

In California, the continuing wrong doctrine only applies to limited circumstances and prescribed causes of action – which do not include fiduciary duty claims. Courts expressly characterize the doctrine as an equitable "exception," which allows tardy claims to proceed in limited circumstances. *See Pugliese v. Superior Court*, 146 Cal. App. 4th 1444, 1451-54 (2007). Courts carefully consider whether the exception should be expanded to encompass particular causes of action, based on their similarities to employment cases involving repeated instances of affirmative misconduct, where the exception originated.[32] Outside those cases, the exception is limited to cases of recurring and severable contractual or statutory breaches.[33] On numerous occasions, courts have

---

[31]    Courts also have referred to the theory by a variety of names, *e.g.*, the continuing violation doctrine, continuing tort doctrine, continuing accrual rule.

[32]    *See Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 344-46 (2009) (Rosenthal Act); *Alch v. Superior Court*, 122 Cal. App. 4th 339, 368-69 (2004) (disability accommodation); *Joseph v. J.J. Mac Intyre Cos.*, 281 F. Supp. 2d 1156, 1160-61 (N.D. Cal. 2003) (FDCPA); *see also Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 812-18 (2001) (tracing doctrine's evolution in employment cases).

[33]    *See Cal. ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th 402, 418 (2007); *Armstrong Petro. Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1388 (2004); *Hogar Dulce Hogar v. Cmty. Dev. Comm'n*, 110 Cal. App. 4th 1288, 1295 (2003).

expressly refused to apply the continuing wrong exception outside these limited contexts.[34]

In particular, there is no authority supporting the application of a continuing wrong theory to breach of fiduciary duty claims. Courts that have considered the issue have uniformly rejected the continuing wrong exception as applied to breaches of fiduciary duty or other breaches of confidence.[35] The reason is clear: such claims are premised entirely on the existence of a protected *relationship*. Once a plaintiff is on notice that the integrity of the relationship has been breached, the statute of limitations commences, regardless of the defendants' continuing failure to discharge their duty or remedy an initial breach.

For instance, the California Court of Appeals rejected the application of the exception to fiduciary duty claims in *Noggle v. Bank of America*, 70 Cal. App. 4th 853 (1999). In the context of a probate claim, the *Noggle* court recognized that a continuing wrong exception for a fiduciary duty claim, based on a *failure to act*,

---

[34] *See Aryeh v. Canon Bus. Solutions, Inc.*, 185 Cal. App. 4th 1159, 1169 (2010) (superseded by grant of review) ("[A]ppellant argues that a doctrine of continuing violations should be applied to violations of the UCL . . . the continuing violation doctrine does not apply . . . Only one reported California case to our knowledge has extended the continuing violations doctrine outside the employment law context [*Komarova*]. No comparable policy considerations compel applying the continuing violations doctrine to violations of the UCL."); *see also Whittaker Corp. v. Execuair Corp.*, 736 F.2d 1341, 1345 (9th Cir. 1984) ("breach of confidence is not a continuing tort"); *Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 649 (N.D. Cal. 1993) ("misappropriation is not a continuing wrong").

[35] "Confidential and fiduciary relations are, in law, synonymous," particularly in the context of principal-agent relations. *See Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1581 (1994); *see also Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 56 Cal. 2d 329, 338 (1961) ("The simultaneous existence of a confidential relationship based on trust and confidence and a fiduciary relationship . . . is readily apparent in many common associations – principal and agent, [etc.].").

contains no outer limit for when the claim may be brought, and would allow the exception to swallow the rule. *See id.* at 860 ("[W]e reject the remaindermen's contention that, because the Bank owed them a continuing fiduciary duty, its continued breach (by its continuing failure to invest in a manner that would have benefited the remaindermen over their parents) tolled the statute of limitations. This argument . . . proposes a rule that would permit a beneficiary to wait forever to pursue a claim."). Similarly, here, Defendants' continuing inaction with respect to licensing revenue purportedly due Plaintiffs cannot constantly restart the limitations period. Plaintiffs' position is facially absurd: under their theory, nothing would prevent Plaintiffs from bringing this same set of claims for Defendants' alleged continuing failures to act every four years into perpetuity.[36]

---

[36] The California Court of Appeals, in subsequent unpublished decisions, has repeatedly rejected efforts to apply the continuing wrong exception to breach of fiduciary duty claims. *See Icu Med., Inc. v. Cardinal Health 303*, No. G037141, 2007 Cal. App. Unpub. LEXIS 5362, at *14 (June 29, 2007) (finding that the "causes of action plaintiff allege [including breach of fiduciary duty] are not subject to a continuing accrual exception. Generally, application of the continuous accrual doctrine has been limited" to periodic payment or continuing nuisance cases); *Peterson v. Picker*, No. G042996, 2011 Cal. App. Unpub. LEXIS 3797, at *8-9 (May 19, 2011) (holding time-barred claims of "continuing" breach of fiduciary duty based on purported failure to pay out funds outside and within statute of limitations); *Steinberg v. Kohn*, No. B168457, 2004 Cal. App. Unpub. LEXIS 7168, at *27-28 (July 29, 2004) (holding time-barred claims of continued breaches of fiduciary duties after initial discovery); *Norris & Galanter LLP v. Gray Gieleghem Belcher LLP*, No. B160503, 2004 Cal. App. Unpub. LEXIS 1491 (Feb. 19, 2004) ("[plaintiff] asserts that its second cause of action for breach of fiduciary duty is not time-barred because the [complaint] alleged that [defendant] continued to breach fiduciary duties after its representation of [plaintiff] ended. . . . [plaintiff] admits that it suffered harm on April 18, 2000 . . . The one-year statute of limitations started ticking at that time, regardless of whether [plaintiff] continued to suffer damages flowing from [defendant]'s representation.").

Likewise, the Northern District of California, applying California law, has rejected the applicability of the continuing wrong doctrine to a claim for breach of fiduciary duty. *See Intermedics*, 822 F. Supp. at 636. The court in *Intermedics* dismissed a breach of fiduciary duty claim, in which the alleged breach consisted of trade secret misappropriations within the limitations period, but followed initial misappropriations occurring outside the limitations period. The court determined that the alleged wrong occurred, and the statute of limitations began to run, from "the first real breach . . . in the [ ] fiduciary relationship that gives rise to the duty" to protect one's legal rights. *Id.* at 649. Under California law, "it is *any* justiciable breach . . . that gives rise to the opportunity to timely use the judicial process to protect plaintiff's interest in maintaining or restoring the integrity of the relationship." *Id.* at 653.

As the foregoing authorities make clear, for claims "based on [a] protected relationship" – like Plaintiffs' claims here – continuing violations after an initial breach do not create new causes of action. Once a confidential or fiduciary relationship suffers an initial breach, the statute of limitations begins to run, and the plaintiff's obligation to protect any remaining rights is triggered. It is beyond dispute that the first alleged breach of purported duties to Plaintiffs occurred more than four years ago, as chronicled in *Adderley*.

A single limitations period applies, and it began to run no later than February 2007 when the *Adderley* plaintiffs brought their suit. Plaintiffs failed to bring their suit within the statutory period, and their action cannot be saved by resort to the continuing wrong theory.

52

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court affirm the district court's orders (i) granting Defendants' Motion for Summary Judgment; and (ii) denying Plaintiffs' *Ex Parte* Application to Set a Class Certification Briefing Schedule.

## STATEMENT REGARDING ORAL ARGUMENTS

Defendants do not believe oral arguments are necessary to decide the issues presented by Plaintiffs' appeal, and uphold the district court's orders and final judgment.

## STATEMENT OF RELATED CASES

Defendants refer the Court to *Brown v. National Football League Players Ass'n*, Nos. 12-56843 and 12-56912, a pending case which may be deemed related pursuant to Ninth Circuit Rule 28-2.6. On November 15, 2012, the Court denied Plaintiffs' Motion to Consolidate the appeals and cross-appeals in these actions.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) because this brief contains 16,315 words.

Dated:  January 16, 2013

LATHAM & WATKINS LLP
  Thomas J. Heiden
  David A. Barrett
  Daniel Scott Schecter
  Michael J. Nelson
  James H. Moon
  D. Jason Lyon

By  s/ Daniel Scott Schecter
  Daniel Scott Schecter

*Attorneys for Defendants/Appellees/
Cross-Appellants National Football
League Players Association & National
Football League Players Incorporated*

| 9th Circuit Case Number(s) | 12-56154, 12-56240 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)

Jan 16, 2013 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)     s/ Daniel Scott Schecter

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)                          .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)